UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
|---|---|---|---|
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

Present: The Honorable   CHRISTINA A. SNYDER

| Catherine Jeang | Lisa Gonzalez | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Jennie Hendrickson | Mary Barry |
| Mark Pachowicz | |

**Proceedings:**   PLAINTIFF'S MOTIONS IN LIMINE NO. 1–7 (Dkts. 65–71, filed October 24, 2016)

DEFENDANTS' MOTIONS IN LIMINE NO. 1–7 (Dkts. 72–78, filed on October 24, 2016)

## I.   INTRODUCTION

On November 11, 2014, plaintiff Jeremy Leon Bordegaray filed a complaint in this Court against defendants County of Santa Barbara ("County"), City of Carpinteria, the Santa Barbara County Sheriff's Office ("SBSO"), Sheriff Bill Brown in his individual and official capacities, Sergeant Daniel Calderon individually and his capacity as a peace officer, Deputy Wesley Johnson individually and his capacity as a peace officer, Deputy Sean Hampton individually and in his capacity as a peace officer, and Does 1–20.  Dkt. 1. In his complaint, plaintiff alleges: (1) the use of excessive force in violation of his civil rights pursuant to 42 U.S.C. § 1983; (2) a violation of the California Constitution, Article 1 § 13; (3) battery; (4) violation of the Bane Act, Cal. Civ. Code § 52.1; (5) false arrest and imprisonment; (6) intentional infliction of emotional distress ("IIED"); (7) failure to provide medical care by officers in the field in violation of § 1983; (8) conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985; (9) policy, custom, and practice in violation of § 1983 ("Monell liability"); (10) supervisory liability for violations of § 1983; (11) retaliation in violation of § 1983; and (12) negligence.  Id. Plaintiff's claims derive from an October 6, 2013 incident in which Calderon fired five shots in the direction of a police car, Unit 5154, that plaintiff had commandeered; plaintiff was struck by two of the bullets.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
|----------|------------------------|------|-------------------|
| Title | JEREMY LEON BORDEGARAY v.  COUNTY OF SANTA BARBARA ET AL. | | |

On July 24, 2015, plaintiff filed his first amended complaint, dismissing defendant City of Carpinteria and dismissing the second, fifth, eighth, and eleventh claims. Dkt. 19. On August 14, 2015, defendants filed their answer. Dkt. 21. On September 9, 2016, defendants filed a motion to modify the scheduling order and amend their answer to add an affirmative defense. Dkt. 44. On September 12, 2016, plaintiff filed his opposition to the motion to amend. Dkt. 49. On September 30, 2016, defendants filed their reply. Dkt. 58. On December 12, 2016, the Court granted defendants' motion to amend their answer. Dkt. 109 ("Order").

Also on September 9, 2016, defendants filed a motion for summary judgment and a separate statement of uncontroverted facts and conclusions of law in support of motion for summary judgment, or in the alternative, partial summary judgment. Dkts. 45, 48, 46. On September 21, 2016, plaintiff filed his opposition to the motion for summary judgment, plaintiff's separate statement of uncontroverted facts, and evidentiary objections. Dkts. 53, 54, 56. On October 3, 2016, defendants filed their reply to plaintiff's opposition, defendants' evidentiary objections, a response to plaintiff's evidentiary objections, and a reply to plaintiff's separate statement of uncontroverted fact. Dkts. 59, 59-21, 59-22, 59-30 ("Reply SUF"). On December 12, 2016, the Court granted defendants' motion in part and denied it in part. See Order.

On October 24, 2016, plaintiff and defendants each filed seven motions in limine. Dkts. 65–78. On October 31, 2016, plaintiff and defendants filed their oppositions to the motions in limine. Dkts. 84–92, 94–98.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    LEGAL STANDARD

A motion in limine is "a procedural device to obtain an early and preliminary ruling on the admissibility of evidence." Goodman v. Las Vegas Metro. Police Dep't, 963 F. Supp. 2d 1036, 1046 (D. Nev. 2013). Trial courts have broad discretion when ruling on such motions. See Jenkins v. Chrysler Motor Corp., 316 F.3d 664, 664 (7th Cir. 2002). Moreover, such rulings are provisional and "not binding on the trial judge" on the court. Ohler v. United States, 529 U.S. 753, 758 n.3 (2000). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
|---|---|---|---|
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." Ind. Ins. Co. v. Gen. Elec. Co., 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

## III.   DISCUSSION

### A.   Plaintiff's Motion in Limine No. 1 to Exclude Evidence of Plaintiff's Criminal History, Convictions, and No Contest Pleas

In his first motion in limine, plaintiff requests that the Court preclude defendants from presenting any evidence of plaintiff's criminal history, specifically: (1) any misdemeanor convictions; (2) Felony Penal Code 245 charging documents with respect to assault on a peace officer, all criminal charging documents in this case, and all underlying felony pleas and convictions in the criminal case; (3) evidence of no contest pleas entered; (4) evidence related to firearms possession and convictions for carrying loaded firearm PC 12031(a)(1); (5) evidence related to a post-incident felony conviction/no contest plea for delaying officer/impeding duties; (6) evidence related to convictions for drug charges. Dkt. 65 at 3.

Plaintiff makes five arguments with respect to evidence of his criminal history. First, plaintiff contends that his criminal history is not admissible to prove predisposition to commit a crime under Federal Rule of Evidence ("FRE") 404(b)(1). Id. at 4–5. Second, plaintiff argues that his prior adult convictions are only relevant for impeachment, and, as a result, Federal Rule of Evidence 609 controls. Id. at 5. Accordingly, plaintiff argues that only his conviction for drug possession with intent to sell, a crime of moral turpitude, should be admitted and it should be admitted with a limiting instruction that "there exists a felony conviction that is a crime of moral turpitude," without announcement of the felony. Id. at 6. If the Court deems any other felony admissible, plaintiff requests the same limiting instruction. Id. Third, plaintiff argues that his felony convictions should be excluded pursuant to FRE 403 because the prejudicial effect of plaintiff's criminal history outweighs any probative value and the admission of such evidence will distract the jury with collateral issues. Id. at 7–8. Fourth, plaintiff argues in the alternative that if any evidence of plaintiff's criminal history is admitted, such evidence should be limited to what Calderon knew at the time of the shooting. Id. at 9. Plaintiff contends that the facts not known to the officers at the time of their encounter with plaintiff are irrelevant to determining whether Calderon

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

reasonably believed that plaintiff posed an imminent danger of death or serious bodily injury at the time of the shooting. Id. Lastly, plaintiff argues that his no contest pleas are inadmissible in a civil case not involving perjury, pursuant to FRE 410.

Defendants argue that plaintiff has a record of eleven felony criminal convictions for crimes punishable by imprisonment for more than one year. Dkt. 91 at 1. Defendants contend that plaintiff's convictions are admissible under FRE 609 to attack plaintiff's character for truthfulness. Because the case depends on a "credibility choice," defendants argue that plaintiff's prior convictions are particularly salient. Id. at 2. Defendants contend that plaintiff's prior convictions should be admitted under FRE 404(b) to prove a purpose other than character. Fed. R. Evid. 404(b)(2). In particular, defendants assert that plaintiff's April 11, 2016 conviction for obstructing/resisting an executive officer is relevant to corroborate Calderon's version of the events, is evidence defeating plaintiff's emotional damages claim, and proves plaintiff's assumption of risk, contributory negligence, and the absence of severe emotional distress. Id. at 3. Defendants argue that plaintiff's May 21, 2014 conviction for possession of a controlled substance with a firearm is relevant to his IIED claim because it shows that plaintiff knew of and accepted the risk of being shot or killed. Id. at 4. Defendants also point to plaintiff's June 15, 2015 conviction for sale of a controlled substance because the related police reports include evidence of drug sales by plaintiff that occurred after plaintiff had been shot, purportedly showing that plaintiff did not suffer emotional distress severe enough to deter him from engaging in dangerous activities likely to lead to contact with law enforcement. Id. Defendants contend that plaintiff's March 8, 2015 arrest for drug possession is relevant to prove plaintiff's failure to mitigate his damages related to the injuries he suffered as a result of the October 6, 2013 incident. Id. Finally, defendants argue that the probative value of plaintiff's convictions is not substantially outweighed by any danger of undue prejudice or the need for "mini-trials." Id. at 5.

With respect to plaintiff's criminal history arising from crimes that are *unrelated* to the October 6, 2013 incident, the Court finds that the probative value of this evidence is substantially outweighed by its prejudicial effect. Fed. R. Evid. 609(a)(1)(A); Fed. R. Evid. 403; United States v. Hursh, 217 F.3d 761, 768 (9th Cir. 2000) ("Generally, FRE 609 provides that evidence of prior felony convictions is admissible for purposes of attacking a witness's credibility if the prejudicial effect of the evidence is outweighed by its probative value."); Wilson v. Union Pac. R. Co., 56 F.3d 1226, 1231 (10th Cir. 1995) ("Evidence of a conviction for drug possession alone is not highly relevant to the issue of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

veracity. Moreover, such evidence can be highly prejudicial and arouse jury sentiment against a party-witness." (citation omitted)); 5 Weinstein's Federal Evidence, § 609 App.101 (2016) ("A 'rule of thumb' thus should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent assaultive crimes generally do not; traffic violations, however serious, are in the same category."). Therefore, the Court excludes evidence of plaintiff's criminal history that does not arise from the October 6, 2013 incident.

With respect to plaintiff's criminal history arising from the October 6, 2013 incident, the Court first concludes that plaintiff's guilty pleas and convictions are irrelevant to the determination of whether Calderon used reasonable force because Calderon could not have known of these pleas or convictions at the time of the incident. The Court therefore finds that the plea and conviction evidence is inadmissible for the purpose of determining whether Calderon's force was reasonable.

Second, evidence of plaintiff's misdemeanor pleas and convictions is not admissible for impeachment purposes because plaintiff's misdemeanors do not involve dishonesty or false statements. See Medrano v. City of Los Angeles, 973 F.2d 1499, 1507 (9th Cir. 1992); Fed. R. Evid. 609(a)(2).

Third, the Court finds that plaintiff's felony convictions are admissible to impeach plaintiff's character for truthfulness, pursuant to FRE 609(a)(1), and admissible to establish defendants affirmative defense under California Civil Code § 3333.3.

Finally, the Court concludes that evidence of plaintiff's *conduct* on October 6, 2013—which served as the basis for plaintiff's felony convictions—is admissible. Such evidence is relevant because it demonstrates the severity of plaintiff's crimes at the time Calderon used force, a factor that the jury must evaluate when determining whether such force was reasonable. See Order at 11.

Accordingly, the Court **GRANTS** plaintiff's motion in limine No. 1 **in part** and **DENIES** it **in part**. Specifically, the Court excludes *all* evidence of plaintiff's criminal history that is *unrelated* to the October 6, 2013 incident. With respect to plaintiff's criminal history arising from the October 6, 2013 incident: (a) the Court excludes evidence of and related to plaintiff's misdemeanor pleas and convictions; (b) the Court excludes evidence of plaintiff's felony pleas and convictions to the extent defendants seek to introduce such evidence to show that Calderon's force was reasonable;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | | **'O'** |
|---|---|---|---|---|
| Case No. | 2:14-cv-8610-CAS(JPRx) | | Date | December 13, 2016 |
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | | |

(c) defendants may introduce evidence of plaintiff's felony convictions for impeachment and to support defendants' affirmative defense under California Civil Code § 3333.3; and (d) defendants may introduce evidence of plaintiff's conduct *during* the October 6, 2013 incident, which served as the basis for plaintiff's felony convictions.

**B.      Plaintiff's Motion in Limine No. 2 to Exclude Evidence of Plaintiff's Prior Incident with San Luis Obispo Law Enforcement**

On August 19, 2013, plaintiff allegedly fled a San Luis Obispo police officer when the officer approached plaintiff's car. Dkt. 92 at 1. Plaintiff avers that, as he was driving out or a parking lot, an officer tried to stop plaintiff from departing and attempted to strike plaintiff through the car window. Dkt. 66 at 3. Defendants contend that plaintiff was in a department store, cutting tags off of merchandise, when plaintiff's girlfriend alerted him to the presence of law enforcement. Dkt. 92 at 1. Defendants assert that plaintiff fled the store, entered his truck, and drove away from the approaching officer. Id. According to defendants, plaintiff nearly hit the officer as he sped away. Id.

Plaintiff argues that evidence of the San Luis Obispo incident should be excluded under FRE 403 because its probative value is substantially outweighed by undue prejudice. Id. at 4. In the alternative, if the Court finds the San Luis Obispo incident is not unduly prejudicial, plaintiff contends that it should be excluded as irrelevant because neither Calderon nor the other officers knew of this incident at the time of the October 6, 2013 arrest or shooting. Id. at 5. Plaintiff further argues that the San Luis Obispo incident is not admissible as evidence of plaintiff's character pursuant to FRE 404(b)(1). Id. at 7.

Defendant argues that evidence of the San Luis Obispo incident is relevant because it tends to make plaintiff's factual allegations (that he did not hit the gas, rev the engine, or use Unit 5154 as a weapon) less probable and defendants' assertions (that plaintiff revved the engine, hit the gas, and accelerated forward with the officer standing near the front of the Unit) more probable. Dkt. 92 at 2–3. Defendants further contend that evidence of the San Luis Obispo incident shows that plaintiff knew that using a vehicle in a threatening manner against a peace officer would result in the use of force against plaintiff. Id. at 3. Therefore, defendants contend that the San Luis Obispo incident is relevant to defendants' affirmative defenses of assumption of risk and comparative negligence and to challenge plaintiff's IIED and emotional distress damages claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

Defendants also argue that the San Luis Obispo incident is admissible under FRE 404(b)(2) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Id. Defendants assert that the San Luis Obispo incident satisfies the Ninth Circuit test for admission of "other act" evidence under FRE 404(b)(2). Id. Under that test, "other act" evidence is admissible under Rule 404(b) if:

> (1) there [is] sufficient proof for the jury to find that the defendant committed the other act; (2) the other act [is] be too remote in time; (3) the other act [is] introduced to prove a material issue in the case; and (4) the other act [is], in some cases, [] similar to the offense charged.

Duran v. City of Maywood, 221 F.3d 1127, 1132–33 (9th Cir. 2000) (citation omitted). Defendants contend that all four prongs of this test are satisfied. Dkt. 92 at 4. In particular, they assert that Calderon's perception of the threat posed by plaintiff is a material issue in this case. Id.

In the instant case, it is not in dispute that plaintiff attempted to drive Unit 5154 while an officer was proximate to the car. Moreover, defendants do not assert that Calderon *knew* of the San Luis Obispo incident at the time of the shooting. Therefore, the San Luis Obispo incident did not contribute to Calderon's perception of the threat posed by plaintiff and is not necessary to prove a material issue in this case. The Court further finds that the probative value of the San Luis Obispo incident is substantially outweighed by the risk of a mini trial on the San Luis Obispo incident, which would be "an inefficient allocation of time." See Tennison v. Circus Circus Enterprises, Inc., 244 F.3d 684, 690 (9th Cir. 2001). Accordingly, the Court **GRANTS** plaintiff's motion in limine No. 2.

### C.   Plaintiff's Motion in Limine No. 3 to Exclude Evidence of the Items Found in the Residence

The October 6, 2013 incident began when officers were dispatched to 3240 Beach Club Road ("residence") on a report of a possible trespasser. Reply SUF at No. 1. Plaintiff seeks to exclude the following evidence found in the residence: Halloween masks, a gun with no serial number, multiple IDs, and numerous cell phones. Dkt. 67 at 3. During his deposition, Calderon stated that at the time he ran down the driveway toward plaintiff, he knew there was "a loaded firearm in the residence and drug

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
|---|---|---|---|
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

paraphernalia and a large amount of cash and other indicators of criminal activity." Id. Ex. A ("Calderon Dep.") 223:19–21. Calderon also stated that he had not determined, at that time, whether the items in the residence belonged to plaintiff. Id. 223:22–24.

Plaintiff argues that evidence of the items found in the residence should be excluded because such evidence would unfairly prejudice a jury, who may label him as a burglar, even though plaintiff was charged only with trespass at the time of his arrest. Id. at 7. In the alternative, plaintiff contends that this evidence should be admitted only to the extent Calderon was aware of it at the time of the shooting. Id. at 3.

Defendants argue that, the discovery of the loaded firearm in the residence is relevant to plaintiff's excessive force claim. Dkt. 94 at 2–3. Defendants also contend that the evidence discovered in the residence is not unfairly prejudicial because the jury will already know that plaintiff was under arrest for committing a crime. Id. at 4.

The Court concludes that the evidence discovered in the residence—to the extent it was known to Calderon at the time of the shooting—is relevant to Calderon's perception of the threat posed by plaintiff and is not unduly prejudicial. Calderon's statement during his deposition that he had not yet determined the ownership of the items in the residence does not preclude the possibility that he had probable cause, at the time of incident, to believe that the items belonged to plaintiff. Contrary to plaintiff's argument, Calderon need not have known with certainty that the items belonged to plaintiff in order for the items to be relevant. Defendants need only prove that, at the time of the shooting, Calderon had probable cause to believe these items belonged to plaintiff. Therefore, the Court admits evidence of the items found in the residence to the extent Calderon was aware of those items at the time of the shooting. Accordingly, the Court **DENIES** plaintiff's motion in limine No. 3.[1]

---

[1] In their opposition to plaintiff's motion in limine no. 3, defendants address the admission of evidence discovered in the residence *and* on plaintiff's person. Dkt. 94 at 1. The Court does not address the evidence discovered on plaintiff's person because plaintiff does not seek to exclude it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | ‘O’ |
|---|---|---|---|
| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

**D.  Plaintiff's Motion in Limine No. 4 with Respect to Spoliation of Evidence**

Plaintiff argues that two instances of spoliation of evidence occurred: (1) Unit 5154 (which had crashed during the incident) was repaired by the County, resulting in the loss of the Power Control Module ("PCM") data, which would have provided the throttle application, exact vehicle speed, and engine revolutions per minute; and (2) diagrams that depicted all the officers' locations at the time of the shooting were turned into the Criminal Investigation Unit but have subsequently been lost, despite two preservation letters sent to the Sheriff's Department. Dkt. 68 at 1. Plaintiff argues that the Court should instruct the jury that it may draw an inference adverse to defendants from the spoliation of this evidence. Id. at 6.

Defendants assert that plaintiff's counsel requested the preservation of evidence beginning "on October 16, 2013 and thereafter," ten days after the shooting, and that plaintiff's counsel did not send these letters until January 4 and August 4, 2014. Dkt. 95 at 1; see dkt. 68, Exs. D, E. Accordingly, defendants argue that they had no notice regarding the preservation of PCM data or the diagrams until three months after the incident occurred. Dkt. 95 at 2. Defendants further contend that plaintiff should have asserted his allegations of spoliation prior to the discovery cut-off, not by means of a motion in limine. Id. at 3. According to defendants, plaintiff made no effort during discovery to learn what happened to the diagrams and did not seek to depose the relevant detectives to inquire what was done with the drawings. Id. Defendants argue that one of the diagrams is not relevant to plaintiff's claims because the officer did not state that he indicated on the diagram the locations of the officers. Id. at 4. Defendants further contend that plaintiff presents no evidence that the PCM data from the date of the incident was ever recoverable and if so, how it became unavailable. Id. Lastly, defendants argue that plaintiff fails to adequately support his motion seeking an adverse inference instruction because he presents no evidence that the evidence was deliberately destroyed by defendants. Id. at 5.

The "obligation to preserve relevant evidence exists whether or not the evidence has been specifically requested in a demand for discovery." Scalera v. Electrograph Systems, Inc., 262 F.R.D. 162, 171 (E.D.N.Y. 2009); see State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc., 425 F.3d 708, 720 (9th Cir. 2005) (approving the principle that a party to litigation bears a general obligation to preserve evidence).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
|---|---|---|---|
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

"However, destruction of documents which would have been relevant in later litigation is not wrongful unless that litigation was reasonably foreseeable at the time of destruction." Hynix Semiconductor Inc. v. Rambus Inc., 897 F. Supp. 2d 939, 975 (N.D. Cal. 2012). "A party's destruction of evidence need not be in 'bad faith' to warrant a court's imposition of sanctions" for spoliation if the court finds the party had notice the destroyed evidence might be relevant to the litigation. In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006); see Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993) ("[A] trial court also has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior. . . . [h]owever, a finding of 'bad faith' is not a prerequisite to this corrective procedure."). "In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." Apple Inc. v. Samsung Elecs. Co., 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012) (Koh, J.); see Akiona v. United States, 938 F.2d 158, 161 (9th Cir. 1991) ("Generally, a trier of fact may draw an adverse inference from the destruction of evidence relevant to a case.")

As an initial matter, the Court finds that the fact that Unit 5154 was repaired and defendants' failure to preserve the diagrams constitutes spoliation. Defendants had a duty to preserve the drawings and any available PCM data because they knew or reasonably should have known that this evidence—potentially showing the location of the officers during the incident and the speed at which Unit 5154 was traveling at the time of shooting—may have been relevant to a reasonably foreseeable lawsuit.

The purpose of an adverse inference instruction is based on two rationales: (1) "the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy it[;]" and (2)"[a]llowing the trier of fact to draw an adverse inference presumably deters parties from destroying relevant evidence before it can be introduced at trial." Millenkamp v. Davisco Foods Int'l, Inc., 562 F.3d 971, 981 (9th Cir. 2009) (citation and quotation marks omitted). The Court concludes that these rationales support an adverse inference instruction in this action. Immediately after the shooting, an action by plaintiff raising an excessive force claim was reasonably foreseeable, yet defendants took no steps to preserve PCM data or the diagrams. Further, an adverse inference will deter defendants and others from allowing relevant evidence to be destroyed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         **'O'**

| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
|---|---|---|---|
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

Accordingly, the Court **GRANTS** plaintiff's motion in limine No. 4 requesting an adverse inference instruction with respect to the spoliation of evidence. However, the instruction shall include the dates on which plaintiff submitted his preservation requests and the fact that plaintiff sought preservation only for the period beginning on October 16, 2013. Whether defendants' conduct was reasonable in those circumstances is a question for the jury.

**E.    Plaintiff's Motion in Limine No. 5 to Exclude the Testimony of Kurt Weiss with Respect to Ballistics**

Plaintiff argues that there is no reliable method related to ballistics or firearms trajectory, therefore defendants' expert Kurt Weiss should not be permitted to provide testimony as a ballistics expert. Dkt 69 at 4. In addition, plaintiff contends that Weiss is an accident reconstructionist/engineer and was not declared as a ballistics expert in the expert initial disclosures or in the rebuttal disclosures. Id. Plaintiff further argues that Weiss is not qualified to offer an expert opinion with respect to ballistics because Weiss has never reconstructed an officer involved shooting, has never been qualified as a ballistics or firearms analyst, and has never been qualified as a bullet trajectory expert. Id.; see dkt. 69 at Ex. A.

Defendants argue that they do not seek to admit expert opinion from Weiss regarding the determination of bullet trajectories. Dkt. 96 at 2. Rather, in his testimony, Weiss refers to "facts established by Senior Criminalist David Barber." Id. at 3. Defendants contend that Weiss can rely on facts established by any other expert who has prepared a report and will testify at trial.

Defendants do not seek to admit Weiss's expert opinion regarding ballistics or bullet trajectories. Therefore, the Court **DENIES** plaintiff's motion in limine No. 5.

**F.    Plaintiff's Motion in Limine No. 6 to Exclude Evidence of Plaintiff's Removal of his Ankle Monitor, Drug Use, Halloween Costumes, and Tattoos**

Plaintiff seeks to exclude evidence of his: (1) past drug use, including the finding of syringes in plaintiff's truck at the time of the incident; (2) prior removal of an ankle monitor; (3) Halloween costumes; and (4) tattoos related to a "toe tag." Dkt. 70 at 3, 4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
|---|---|---|---|
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

n.1.[2]  Plaintiff argues that these facts should be excluded because they are unduly prejudicial and their admission poses a substantial risk of leading to litigation of collateral issues. Id. at 4–7. In the alternative, plaintiff contends that admission should be limited to what Calderon was aware of at the time of the shooting. Id. at 7–8. Plaintiff also argues that evidence of his past drug use, removal of his ankle monitor, Halloween costumes, and toe tag tattoo should not be admitted as character evidence. Id. at 8–9.

With respect to plaintiff's prior drug use, defendants argue that (a) plaintiff's testimony at his deposition that he used methamphetamine on the morning of October 6, 2013, (b) the fact that methamphetamine was found in plaintiff's belongings on that date, and (c) plaintiff's guilty plea and conviction for possession of that methamphetamine corroborate Calderon's testimony that plaintiff made the reckless decision to flee and use Unit 5154 as a weapon to threaten Calderon. Dkt. 97 at 2–3. Defendants also seek to introduce other evidence of plaintiff's drug use, specifically plaintiff's arrest on March 8, 2015 for possession of methamphetamine, and subsequent conviction. Id. at 3. Defendants argue that this evidence is relevant to defendants' affirmative defenses of comparative negligence and assumption of risk because plaintiff's physician testified that methamphetamine use interferes with plaintiff's healing. Id. at 3–4. With respect to the ankle monitor, defendants argue that plaintiff's status as "an absconder from probation" on October 6, 2013 is relevant to corroborate Calderon's perception that plaintiff was using Unit 5154 as a weapon because it shows plaintiff's motive, plan, and intent to escape. Id. at 4. Defendants assert that plaintiff's dressing up as a narcotics officer "to be ironic" and plaintiff's toe tag tattoo are probative of the absence of extreme emotional distress, and are therefore relevant to defendants' defense of plaintiff's IIED claim. Id. at 4–5. Lastly, defendants argue that the probative value of this evidence is not substantially outweighed by the danger of undue prejudice or of creating mini-trials.

The Court finds that evidence of plaintiff's drug use on October 6, 2013 is admissible because it is relevant to and may corroborate Calderon's testimony that plaintiff acted recklessly. The Court admits such evidence, subject to a limiting

---

[2] With respect to items 3 and 4, defendants clarify that they seek to introduce a photograph from plaintiff's Facebook page showing him dressed as a law enforcement officer with a hat stating "Narcotics Officer," posted one year after the shooting, and evidence of plaintiff's tattoo of a spider web on his foot with an arrowing point at his big toe and the words "HANG THE TAG HERE." Dkt. 97 at 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
|---|---|---|---|
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

instruction that the jury may consider it only to assess Calderon's perception of plaintiff and plaintiff's conduct at the time of the incident.

However, the Court finds that the probative value of *other* evidence of plaintiff's drug use is substantially outweighed by unfair prejudice. The Court further finds that plaintiff's removal of his ankle monitor, his Halloween costumes, and his toe tag tattoo are not relevant to whether Calderon's use of force was reasonable. In addition, the Court concludes that plaintiff's Halloween costume and his toe tag tattoo are not probative of an absence of emotional distress.

Accordingly, plaintiff's motion in limine No. 6 is **GRANTED in part** and **DENIED in part**. Specifically, the Court admits evidence of plaintiff's drug use on October 6, 2013, subject to a limiting instruction, and excludes evidence of: (a) plaintiff's other drug use, (b) plaintiff's removal of his ankle monitor, (c) plaintiff's narcotics officer costume, and (d) plaintiff's toe tag tattoo.

### G.     Plaintiff's Motion in Limine No. 7 to Exclude Reference to a Fleeing Felon Theory

Plaintiff seeks to exclude from trial the suggestion that a rule exists permitting an officer to shoot someone if the officer believes that person is a "fleeing felon." Dkt. 71 at 3. Plaintiff argues that such a rule misstates the law. Id. at 3. Plaintiff asserts that the "fleeing felony" theory is irrelevant, confusing, and prejudicial because Calderon does not assert that he discharged his weapon because plaintiff was fleeing, but because Calderon believed plaintiff posed imminent threat of death or great bodily injury. Id. at 3–4.

Defendants contend that plaintiff's felony theft of a motor vehicle and his acts in driving away are circumstances to which Calderon was responding at the time of the shooting, and are therefore essential to the jury's application of the Fourth Amendment's objective reasonableness standard to plaintiff's excessive force claim. Dkt. 98 at 3. Defendants also argue that plaintiff's motion is not a proper motion in limine, but an effort to deny defendants the opportunity to fully defend themselves against the excessive force claim. Id. at 3–4. The Court agrees. An excessive force claim is analyzed under the Fourth Amendment and the relevant inquiry is whether officers' actions are "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | ‘O’ |
|---|---|---|---|
| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

386, 395, 397 (1989). That plaintiff was a fleeing felon is undisputed and Calderon confronted that fact at the time of the incident. Accordingly, plaintiff's motion in limine No. 7 is **DENIED**.

## H. Defendants' Motion in Limine No. 1 to Exclude Evidence of Other Law Enforcement Policies

During discovery, plaintiff subpoenaed policies regarding deadly force, firing and moving vehicles, deadly force to affect arrest or prevent escape, and use of firearms from the San Bernardino County Sheriff's Department, the Ventura County Sheriff's Office, the San Luis Obispo Sheriff's Office, and the Los Angeles County Sheriff's Office. Dkt. 84 at 1.

Defendants argue that the internal "use of force" policies of the Los Angeles County, San Bernardino County, and Ventura County Sheriff's Departments should be excluded. Dkt. 72 at 1. Defendants argue that these policies are irrelevant to plaintiff's excessive force claim against Calderon, who is an employee of the Santa Barbara County Sheriff's Office ("SBSO") and who is therefore not expected to know or follow those policies. Id. at 2. Defendants contend that these policies are also irrelevant to plaintiff's Fourth Amendment claim against the County of Santa Barbara because the policies of other counties have no bearing on whether the SBSO's policy was the moving force behind any unconstitutional conduct of its deputies. Id. at 2–3. Defendants argue that the undated San Bernardino County policies and the Ventura County policy adopted in January 2016 are irrelevant because there is no evidence these policies were in place in October 2013. Id. at 3. In addition, defendants assert that San Bernardino County policies 3.166.55 and 3.166.57 are irrelevant because the policies concern vehicle pursuits, but the officers involved in the underlying incident were not using a vehicle to pursue plaintiff. Id. at 3–4. Lastly, defendants argue that other law enforcement agencies' use of force policies should be excluded pursuant to FRE 403 because their probative value is substantially outweighed by their prejudicial effect and because the introduction of those policies risks confusing the issues, misleading the jury, and wasting time. Id. at 4–5.

Plaintiff argues that these other policies are relevant to determining whether the SBSO is subject to Monell liability, because that determination requires weighing different alternatives available to SBSO policy makers. Dkt. 84 at 2. Plaintiff contends that the SBSO "made a deliberate and conscious choice to draft a series of policies which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

discouraged – but which did not prohibit – officers from shooting at moving vehicles." Id. at 3. Plaintiff asserts that a jury would not be able to fully appreciate the SBSO's conscious and deliberate choice to allow use of deadly force to subdue suspects fleeing by car absent reference to the policies of other counties. Id. Plaintiff also argues that in order to establish that the SBSO is liable under Monell, plaintiff need not prove that Calderon committed a constitutional violation. Id. at 3–4. Lastly, plaintiff argues that its expert has reviewed the other counties' policies and must be able to explain the basis of his opinion that "[t]he Use of Deadly Force on Mr. Bordegaray in this instance violates the common core of most police agencies. Shooting at a moving vehicle is known to be inherently dangerous and most often ineffective, and shows a disregard for human life." Id. at 4–5; dkt. 75-3 ¶ 49.

The Court concludes that the probative value of other counties' use-of-force policies is substantially outweighed by a danger of undue delay and confusion. The introduction of such policies is likely to require mini trials regarding the origin and interpretation of those policies. Accordingly, the Court **GRANTS** defendants' motion limine No. 1.

## I.    Defendants' Motion in Limine No. 2 Regarding Trifurcation of Trial

Defendants request that the Court trifurcate the trial of this matter into three phases: (1) liability, compensatory damages, and the issue of proof supporting a punitive damages award; (2) the issue of Monell liability; (3) punitive damages. Dkt. 73 at 3. Defendants contend that trifurcation will allow the jury to first address whether plaintiff's Fourth Amendment rights were violated, and if so, by whom. Id. According to defendants, if the jury concludes plaintiff's Fourth Amendment rights were *not* violated, there would be no need to consider plaintiff's Monell claims. Id. Therefore, trifurcation would serve the interests of judicial economy. Id. at 4. Defendants further argue that litigation of punitive damages concurrent with liability is inherently prejudicial to defendants, who must simultaneously deny liability and present evidence of their financial condition to establish the ability to pay damages based on their conduct. Id.

Plaintiff argues that the evidence necessary for liability as to the individual officers, the supervisors, the County of Santa Barbara, the SBSO and for damages is intertwined. Dkt. 85 at 2. As a result, plaintiff contends that the same witnesses will be necessary and testimony will be duplicative, such that bifurcation of the liability and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

damages stages will not serve the interests of judicial economy. Id. at 2–3. Plaintiff also argues that separating the Monell claims from plaintiff's other claims does not serve the interests of judicial economy because the relevant evidence is intertwined. Id. at 3–4. Plaintiff contends that defendants have failed to indicate what prejudice they would suffer from trying the Monell claims with plaintiff's other claims. Id. at 5. Finally, plaintiff asserts that he could proceed with his Monell claim notwithstanding the existence of an underlying constitutional violation. Id. at 5–6.

Federal Rule of Civil Procedure 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues[.]" Fed. R. Civ. P. 42(b). "Factors to be considered when deciding whether to bifurcate a trial include: complexity of issues, factual proof, risk of jury confusion, difference between the separated issues, the chance that separation will lead to economy in discovery, and the possibility that the first trial may be dispositive of the case." MySpace, Inc. v. Graphon Corp., 732 F. Supp. 2d 915, 917 (N.D. Cal. 2010).

To serve the interests of judicial economy, the Court intends to bifurcate the questions of the officers' individual liability and plaintiff's Monell claims. At this juncture, the Court cannot decide whether there will be a need for a third phase addressing punitive damages. In the event that the jury finds liability for a violation of a constitutional right and determines that individual officers acted with the requisite malice, see Cal. Civ. Code § 3294(a), the Court will discuss with the parties whether a third phase is necessary to address punitive damages.

Accordingly, the Court **GRANTS** in part and **DENIES in part without prejudice** defendants' motion in limine No. 2.

### J.     Defendants' Motion in Limine No. 3 to Limit the Testimony of Plaintiff's Expert Witness Timothy Reust

Defendants request that the Court preclude plaintiff's Expert Witness Timothy Reust from testifying about opinions, facts, diagrams, and other exhibits omitted from his expert report because this material was not disclosed as required by Federal Rule of Civil Procedure 26(a)(2). Dkt. 74 at 1.

Defendants allege the following sequence of events. Plaintiff served his initial expert disclosure, listing Reust, on June 17, 2016, the date of the expert disclosure cutoff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| **CIVIL MINUTES – GENERAL** | | | **'O'** |
|---|---|---|---|
| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
| Title | JEREMY LEON BORDEGARAY v.  COUNTY OF SANTA BARBARA ET AL. | | |

Id.  Defendants scheduled a disposition of Reust for August 16, 2016.  Id.  Defendants' expert witness, Kurt Weiss, prepared a rebuttal report to Reust's report and the rebuttal report was served on plaintiff on July 18, 2016.  Id.  Weiss prepared a supplemental report that corrected his initial rebuttal report; this supplemental report was served on plaintiff on July 25, 2016.  Id.  On the morning of Reust's deposition, plaintiff's counsel sent by email a number of documents not previously disclosed.  Id. at 2.  During his deposition, Reust changed three of the conclusions set forth in his expert report and identified an error in a diagram attached to that report.  Id.  These alterations corresponded to Weiss's rebuttal of Reust's conclusions.  Id.  Defendants argue that plaintiff cannot meet his burden of demonstrating that the failure to comply with Rule 26 was justified or harmless.  Id. at 3–4.

Rule 26(a)(2)(A) requires parties to disclose the identity of any witness it intends use at trial to present expert testimony.  Fed. R. Civ. P. 26(a)(2)(B).  Rule 26(a)(2)(B) requires that this disclosure is accompanied by a written report that must contain, inter alia: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them[.]"  Fed. R. Civ. P. 26(a)(2)(B).  Where a party "fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions."  Fed. R. Civ. P. 37(a)(3)(A).  Under Federal Rule of Civil Procedure 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "[T]he burden is on the party facing sanctions to prove harmlessness."  Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1107 (9th Cir. 2001).  The Ninth Circuit "give[s] particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)."  Id. at 1106.

The Court recognizes that Reust's alterations to his opinions and diagrams after the expert disclosure cutoff constitute a failure to comply with the requirements of Rule 26(a)(2)(B).  However, defendants were made aware of this new information on August 16, 2016, approximately five months before the start of trial on January 17, 2017.  In addition, defendants are free to cross-examine Reust on the basis for his modifications to the report.  Accordingly, the Court finds that plaintiff's violation of Rule 26 is harmless and the Court, therefore, declines to preclude Reust from testifying about opinions, facts,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

diagrams, and other exhibits omitted from his expert report. Defendants' motion in limine No. 3 is **DENIED**.

### K. Defendants' Motion in Limine No. 4 to Limit the Testimony of Plaintiff's Expert Witness Kurt Rothschiller

Defendants request that the Court preclude plaintiff's designated retained expert witness Curt Rothschiller from testifying regarding law enforcement and police practices because Rothschiller has never been previously retained as an expert witness. Dkt. 75 at 1. Defendants argue that Rothschiller is unqualified to testify as an expert witness and that his report contains conclusory opinions. Id. at 2. Defendants point to Rothschiller's lack of experience, including that he was never assigned to internal affairs, never investigated an officer-involved shooting, never served as lead investigator responsible for preparing any presentation for any review board regarding an officer-involved shooting, and never prepared a presentation for a use-of-force review board during Rothschiller's 36-year tenure in the Ventura County Sheriff's Office. Id.; dkt. 75, Ex. 3. Defendants argue that Rothschiller is not qualified to testify as an expert regarding plaintiff's medical condition because Rothschiller has admitted that is not a medical expert. Id. at 3. Defendants contend that Rothschiller should not be permitted to testify that Calderon's actions were objectively reasonable because other tactical options existed. Id. According to defendants, such testimony regarding alternative measures improperly relies on hindsight. Id. at 4; see George v. Morris, 736 F.3d 829, 839 n.14 (9th Cir. 2013) (in a § 1983 case arising from an officer-involved shooting, noting that plaintiff's "proposed alternative measures are plagued with the sort of hindsight bias the Supreme Court has forbidden."). Defendants assert that Rothschiller should be prohibited from offering his opinion on the issue of whether Calderon's use of force was excessive because experts may not give an opinion on an ultimate issue of law. Dkt. 75 at 4. Finally, defendants argue that Rothschiller should be prohibited from offering his opinions regarding ballistics and bullet trajectory, as contained in his report, because Rothschiller admits he is not an expert in such fields. Id.

Plaintiff argues generally that Rothschiller—a retired Captain, Special Services Unit, Ventura County Sheriff's Department – Special Crimes Division, who spent 36 years in law enforcement—is qualified to testify to police practices. Dkt. 87 at 3. Plaintiff contends that it is irrelevant that Rothschiller has never been retained to testify on police practices in a civil rights case. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

More specifically, plaintiff first asserts that Rothschiller's opinions on "ultimate issues" are not per se improper. Id.; see Elsayed Mukhtar v. California State Univ., Hayward, 299 F.3d 1053, 1068 (9th Cir. 2002) ("It is well-established, however, that expert testimony concerning an ultimate issue is not per se improper.") overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc., 740 F.3d 457 (9th Cir. 2014). Plaintiff contends that expert testimony on police practices, including whether officers violated law enforcement standards, is generally admissible in police misconduct cases. Dkt. 87 at 3–4; see, e.g., Smith v. City of Hemet, 394 F.3d 689, 703 (9th Cir. 2005) ("Discussing whether the officers' conduct comported with law enforcement standards, the expert . . . concluded that the officers could and should have used control holds to complete the arrest rather than to sic [a police canine] on him once they had him restrained on the ground. A rational jury could rely upon such evidence in assessing whether the officers' use of force was unreasonable"). Additionally, plaintiff asserts that Rothschiller can testify as to whether force would be considered appropriate under hypothetical scenarios. Dkt. 87 at 4; see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) ("the use of leading, hypothetical questions to elicit expert opinions is entirely appropriate."). Second, plaintiff argues that Rothschiller can testify to ballistics and bullet trajectories based on his experience, training, and skillset. Id. Third, plaintiff contends that Rothschiller is qualified to offer his opinion related to the investigation of the officer-involved shooting because Rothschiller has testified on many issues—including surveillance, officer safety, and training officers on how to deal with a person in crisis—and he has performed administrative investigations of officers, including investigations involving the use of force (though not regarding a shooting by an officer). Id. at 6. In addition, Rothschiller has assisted lead investigators in preparing their officer-involved shooting presentations. Id. According to plaintiff, the process of the investigation of officer-involved shootings is very familiar to Rothschiller from personal observation and experience. Id. at 6–7. Finally, plaintiff argues that Rothschiller should be permitted to testify as to the conduct of the officers in rendering first aid treatment to plaintiff based on Rothschiller's first-hand knowledge and experience. Id. at 7.

The Federal Rules of Evidence impose on trial courts a "gatekeeping" obligation to ensure that expert testimony is relevant and reliable. United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir. 2000). The objective of the "gatekeeping" requirement, derived from Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 589 (1993), "is to ensure the reliability and relevancy of expert testimony" and "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 152 (1999). The trial judge must make a reliability determination on the record to fulfill the "gatekeeping" function. <u>Mukhtar</u>, 299 F.3d at 1066. Trial courts have "broad discretion" in performing this function and "Rule 702 generally is construed liberally" when courts are "considering the admissibility of testimony based on some 'other specialized knowledge.'" <u>Hankey</u>, 203 F.3d at 1168. Accordingly, "rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 Advisory Committee Notes (2000).

The Court concludes that Rothschiller's long history of law enforcement experience qualifies him to testify as an expert on police practices. <u>See Hankey</u>, 203 F.3d at 1169 (concluding that the reliability of a police gang expert "depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it."); <u>Trustees of Chicago Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Trust Funds v. Royal Int'l Drywall & Decorating, Inc.</u>, 493 F.3d 782, 787 (7th Cir. 2007) ("[W]hile extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience."). Defendants' objections largely go to the weight of Rothschiller's testimony, and are not grounds for disqualification.

Nonetheless, it appears that several of Rothschiller's opinions, as currently formulated, are not helpful to the jury because they constitute impermissible legal conclusions. <u>See Elsayed Mukhtar v. California State Univ., Hayward</u>, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002), <u>overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.</u>, 740 F.3d 457 (9th Cir. 2014) ("Federal Rule of Evidence 704(a) provides that expert testimony that is otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. However, an expert witness cannot give an opinion as to her <i>legal conclusion, i.e.,</i> an opinion on an ultimate issue of law." (quotation marks omitted)). For example, Rothschiller repeatedly opines that the use of force was "excessive" or "unreasonable" under the circumstances. <u>See, e.g.,</u> dkt. 75, Ex. 2 ¶¶ 68, 72, 80. Whether Calderon's actions were "objectively reasonable" in light of the facts and circumstances confronting him is, however, a question for the jury or, if no material facts are in dispute, for the Court. <u>See Scott v. Henrich</u>, 39 F.3d 912, 916 (9th Cir. 1994). Although the Court finds that Rothschiller is qualified to opine as to whether Calderon's use of force was excessive or unreasonable, the Court concludes that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | ‘O’ |
|---|---|---|---|
| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

such testimony should be explored through hypothetical questioning so as to avoid invading the province of the jury. Accord Engman v. City of Ontario, No. 5:10-cv-00284-CAS-PLA, 2011 WL 2463178, at *7 (C.D. Cal. June 20, 2011).

Accordingly, the Court **GRANTS in part** and **DENIES in part** defendants' motion in limine No. 4.

## L.    Defendants' Motion in Limine No. 5 Regarding Damages Evidence

Defendants request that the Court exclude any evidence of plaintiff's damages for which computation was required by Federal Rule of Evidence 26, including plaintiff's medical expenses. Dkt. 76 at 1. Plaintiff alleges that he has suffered medical expenses, loss of earnings, and other pecuniary losses not yet ascertained, however defendants argue that plaintiff failed to provide a computation of each category of damages claimed by him as required by Rule 26(a)(1)(A)(iii). Id. In plaintiff's Rule 26(a)(1) initial disclosures and supplemental disclosures, plaintiff stated: "It is impossible to provide an accurate estimate of the true value of this case at this time because discovery is still ongoing. Dkt. 76, Ex. 1 at 4; id. Ex. 2 at 6. In addition, defendants assert that plaintiff has failed to make available for inspection and copying any documents or evidentiary material on which any computation was based, including materials relating to the nature and extent of plaintiff's injuries. Dkt. 76 at 1. Discovery in this matter closed on September 6, 2016. On October 20, 2016, plaintiff sent defendants' counsel a letter from the State of California Department of Health Care Services Recovery Section, dated October 17, 2016, stating that Department of Health Care Services ("DHCS") has a lien for reimbursement against plaintiff for $135,713.61 for medical services received by plaintiff from October 6, 2013 to February 3, 2015. Id. at 2. Defendants assert that they are harmed by plaintiff's failure to properly and timely disclose damages because they have no knowledge of what categories of damages plaintiff intends to claim at trial or how plaintiff intends to compute damages. Id. at 3. Defendants therefore request that the Court exclude evidence of plaintiff's medical costs. Id.; see Baca v. California, No. 13-cv-02968-SBA, 2015 U.S. Dist. LEXIS 175009, at *16 (N.D. Cal. Dec. 19, 2015) (prohibiting plaintiff from offering evidence or argument regarding his medical costs because plaintiff never provided a computation of those costs). In the alternative, defendants request that the Court limit the damages evidence that plaintiff may submit to "no more than the amounts actually paid by Medi-Cal for the medical services received," pursuant to California law limiting the amount of recovery to bills actually paid. Dkt. 76 at 4–5; see Howell v. Hamilton Meats & Provisions, Inc., 257 P.3d 1130, 1145 (2011)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
|---|---|---|---|
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

("[A]n injured plaintiff whose medical expenses are paid through private insurance may recover as economic damages no more than the amounts paid by the plaintiff or his or her insurer for the medical services received or still owing at the time of trial."). Relatedly, defendants request that plaintiff be precluded from introducing evidence of medical costs paid by the County of Santa Barbara, incurred while plaintiff was in the custody of the SBSO. Dkt. 76 at 4.

Plaintiff contends that the initial billing information that he received from Medi-Cal stated that the amount of services rendered was $2000. Dkt. 90 at 3. Believing this amount was grossly inadequate given the extent of plaintiff's medical treatment, plaintiff's counsel contacted Medi-Cal by phone. Id. After this phone conversation, plaintiff received a letter dated October 17, 2016, that stated that plaintiff received $180,951.47 of services and that DHCS reduced the amount owed to $135,713.61. Id. & Ex. A. Plaintiff argues that he cannot control the timing of Medi-Cal's "final lien" letter, therefore his late disclosure of medical costs was substantially justified. Dkt. 90 at 4. Plaintiff contends that his late disclosure was harmless because he did not act in bad faith and because defendants—having deposed all of the doctors who will testify regarding plaintiff's medical costs and received testimony that the services provided were necessary—did not suffer unfair prejudice. Id. at 4–6. Plaintiff argues that the Howell rule does not apply to federal claims because it contradicts the federal collateral source rule. Id. at 6; McConnell v. Wal-Mart Stores, Inc., 995 F. Supp. 2d 1164, 1171 (D. Nev. 2014) ("The Howell case is therefore squarely at odds with the collateral source rule, which utterly disregards the amount of money a tort victim is actually made to pay to remedy his injuries, in favor of awarding the reasonable cost of ameliorating the injuries, notwithstanding any potential 'double recovery' by the tort victim."). In addition, plaintiff contends that Howell does not apply because its rule is inconsistent with § 1983's goals of compensation and deterrence, and its subsidiary goals of uniformity and federalism. Dkt. 90 at 7–8.

Rule 26(a)(1)(A)(iii) requires each party to provide to the other "a computation of each category of damages claimed by the disclosing party." As described above, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court agrees with plaintiff that his delay in disclosing his medical costs was both justified and harmless. As of October 20, 2016,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                 'O'

| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
|----------|------------------------|------|-------------------|
| Title    | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

approximately three months before the start of trial, defendants became aware of the medical costs that plaintiff incurred.  In addition, defendants have had the opportunity to conduct discovery with respect to plaintiff's medical care, including the deposition of plaintiff's medical experts.

"[E]vidence regarding a plaintiff's receipt of benefits from a collateral source is ordinarily inadmissible to offset his or her damages award." Maharaj v. California Bank & Trust, 288 F.R.D. 458, 461 (E.D. Cal. 2013).  By contrast, pursuant to Howell, evidence of what is actually paid on plaintiff's behalf—even if paid by an insurance company—is properly introduced without a violation of the collateral source rule.  The Court concludes, however, that Howell does not limit the evidence plaintiff may introduce because, "in this case, the federal—not state—evidentiary rules apply." Van Maanen v. Youth With a Mission-Bishop, No. 1:10-cv-00493-AWI, 2011 WL 5838185, at *6 (E.D. Cal. Nov. 21, 2011); see England v. Reinauer Transp. Companies, L.P., 194 F.3d 265, 273 (1st Cir. 1999) ("When a case is being heard in federal court, the evidentiary, as opposed to the substantive, aspects of the collateral source rule are governed by the Federal Rules of Evidence, particularly Rules 401, 402, and 403."); Ishikawa v. Delta Airlines, Inc., 343 F.3d 1129, 1133–34 (9th Cir. 2003) ("State law can also be implicitly preempted if it conflicts with federal law, either through such a conflict that compliance with both is impossible, or where the state law is an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (citation and quotation marks omitted)).

Accordingly, the Court **DENIES** defendants' motion in limine No. 5.

### M.   Defendants' Motion in Limine No. 6 to Limit the Testimony of Plaintiff's Expert Witnesses Stephen Kaminsky and Andrew Zepp

Defendants request that the Court limit the evidence that may be offered by plaintiff's experts Dr. Stephen Kaminsky and Dr. Andrew Zepp to testimony that is consistent with plaintiff's disclosures and the witnesses' qualifications.  Dkt. 77 at 1.

On June 17, 2016, plaintiff disclosed Kaminsky as a non-retained expert, stating that Kaminsky, a licensed general surgeon and traumatic surgeon, will testify that plaintiff developed a fistula caused by the shooting, his diagnosis and prognosis, and the reasonableness of plaintiff's medical bills.  Id. at 1; id. Ex. 1 at 5.  On July 15, 2016, plaintiff disclosed Zepp as a non-retained expert who will testify regarding the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

rehabilitation status of plaintiff's enterocutaneous fistula and Zepp's opinion that plaintiff's colostomy is potentially irreversible. Dkt 77 at 2; id. Ex. 2 at 2.

Defendants argue that Zepp is not qualified to provide expert testimony regarding whether plaintiff's colostomy is irreversible because: (1) Zepp does not consider himself a surgeon; (2) he has no experience in gastrointestinal surgery beyond his basic training as a medical student and during his residency; (3) he has no experience in enterocutaneous fistulas; and (4) Zepp has testified that whether plaintiff's fistula is treatable is "far beyond [his] ability to say" and is an opinion that should be offered by a specialist. Dkt. 77 at 2; id. Ex. 3. Defendants also request an order that would preclude plaintiff from seeking expert opinion from Kaminsky beyond the scope of the subject matter disclosed in plaintiff's Rule 26 expert disclosure. Id. at 3.

Plaintiff argues that Zepp and Kaminsky were plaintiff's treating physicians, and as such they may be treated as fact witnesses not required to provide an expert of summary of testimony prior to trial. Dkt. 88 at 2; see Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 819 (9th Cir. 2011) ("Generally speaking, treating physicians are excused from [the Rule 26(a)(2)] requirement. They are a species of percipient witness. They are not specially hired to provide expert testimony; rather, they are hired to treat the patient and may testify to and opine on what they saw and did without the necessity of the proponent of the testimony furnishing a written expert report."). Plaintiff contends that defendants knew that Zepp was plaintiff's treating physician at Wasco State Prison because Zepp testified to this fact at his deposition. Dkt. 88 at 1; id. Ex. B. In addition, plaintiff asserts that, based on Kaminsky's deposition, defendants knew that Kaminsky was plaintiff's treating physician at Santa Barbara Cottage Hospital and that Kaminsky would testify to plaintiff's development of a fistula. Dkt. 88 at 2; dkt. 77-5. Plaintiff therefore argues that Zepp and Kaminsky are "free to testify as fact witnesses to the extent their testimony involves the actual work performed and observations made while in contact with Plaintiff." Dkt. 88 at 3. In addition, plaintiff argues that Zepp and Kaminsky should be able to offer opinions consistent with plaintiff's Rule 26(a) disclosures. Id. at 3–4.

As the parties appear to concede, Rule 26 requires that both doctors' expert testimony is limited to the scope of plaintiff's Rule 26(a) disclosures. In addition, the Court concludes that Zepp and Kaminsky—as treating physicians—may "testify to and opine on what they saw and did without the necessity of the proponent of the testimony

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
|---|---|---|---|
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

furnishing a written expert report." Goodman, 644 F.3d at 819. Accordingly, *as a treating physician*, Zepp may address plaintiff's prognosis, including whether plaintiff's colostomy is potentially irreversible. See Sprague v. Liberty Mut. Ins. Co., 177 F.R.D. 78, 81 (D.N.H. 1998) ("The majority of other courts in the country have concluded that Rule 26(a)(2)(B) reports are not required as a prerequisite to a treating physician expressing opinions as to causation, diagnosis, prognosis and extent of disability where they are based on the treatment."). Whether Zepp, as plaintiff's treating physician, has a sufficient basis for his opinions on plaintiff's prognosis is a subject for cross-examination.

Accordingly, the Court concludes that Zepp and Kaminsky's *expert* testimony must be consistent with plaintiff's Rule 26(a) disclosures. However, Zepp and Kaminsky may offer testimony *as treating physicians* that goes beyond the scope of the Rule 26(a) disclosures. Accordingly, defendants' motion in limine No. 6 is **GRANTED in part** and **DENIED in part**.

### N.     Defendants' Motion in Limine No. 7 to Exclude SBSO's Policy 314 Regarding Vehicle Pursuits

Defendants request that the Court exclude evidence of SBSO Policy 314, which addresses vehicle pursuits. Dkt. 78 at 1. Defendants argue that Policy 314 is irrelevant because it only applies when a suspect is pursued by a peace officer who is in a motor vehicle—which is not the case in this matter. Dkt. 78 at 2. SBSO Commander Craig Bonner testified during his deposition that that Policy 314 applies only to vehicle-to-vehicle pursuits and does not apply when an officer is chasing a vehicle on foot. Id. at 2 & Ex. 3. Policy 314 is irrelevant to whether Calderon's use of force was objectively reasonable because, according to defendants, its purpose is not protect the driver of the vehicle, but to balance the need for the capture of a suspect against the risks to peace officers and other members of the public. Id. at 2–3; see Scott v. Henrich, 39 F.3d 912, 915–16 (9th Cir. 1994) ("Assuming internal police guidelines are relevant to determining whether use of force is objectively reasonable, they are relevant only when one of their purposes is to protect the individual against whom force is used." (citation omitted)). Defendants assert that Policy 314 is also irrelevant to plaintiff's Monell claim because Policy 314 is not applicable to Calderon's conduct. Dkt. 78 at 3. Defendants contend that Section 314.7.3 of Policy 314 does not make the Policy relevant to this case. Id. Section 314.7.3 is entitled "Use of Firearms" and states that "[t]he use of firearms to disable a pursued vehicle is generally not an effective tactic." Dkt. 78, Ex. 1. Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
|---|---|---|---|
| Title | JEREMY LEON BORDEGARAY v. COUNTY OF SANTA BARBARA ET AL. | | |

assert that the inclusion of a section on firearms is specific to the use of firearms *during* vehicle pursuits. Id. at 3. Defendants also note that there is no evidence that Calderon shot plaintiff in attempt to disable the vehicle plaintiff was driving. Id. Defendants argue that even if Policy 314 were relevant, it should be excluded pursuant to FRE 403 because its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. Id. at 4. Defendants assert that admission of Policy 314 would waste time because defendants would need to present testimony explaining to the jury why Policy 314 does not apply to this case. Id. at 4. Finally, defendants contend that admission of Policy 314 would be prejudicial because it would suggest that Calderon was required to follow a policy designed to address safety issues related to circumstances not present during the incident. Id.

Plaintiff argues that Policy 314 applies to situations involving an officer, even on foot, in pursuit of a vehicle. Dkt. 89 at 1–2. Plaintiff also points to Commander Bonner's testimony. Bonner stated that Section 314.7.3 of Policy 314 applies to circumstances beyond an officer firing a firearm from one moving vehicle toward another. Dkt. 89, Ex. 1 39:13. Rather, Bonner explained that Section 314.7.3 could apply when an officer who is not in a police vehicle discharges his firearm toward a vehicle. Id. 39:14–40:7. Plaintiff argues that Policy 314 is relevant to the question of whether Calderon's use of force was reasonable. Dkt. 89 at 4. Plaintiff contends that Policy 314 is relevant because its purpose is to minimize safety risks inherent in pursuit, including risks to person in the pursued vehicle. Id. at 4–5. In addition, plaintiff asserts that Policy 314 is relevant to show that defendant officers were not required to initiate a pursuit. Id. at 5. Plaintiff argues that Calderon fired at him in attempt to disable the vehicle because after the incident, Calderon stated that he fired at plaintiff because plaintiff "took off." Id. at 6. Because plaintiff contends that Calderon was acting pursuant to an applicable policy, plaintiff asserts that Policy 314 is relevant to his Monell claim. Finally, plaintiff argues that Policy 314 should be admitted under FRE 403 because it is critical to whether a SBSO officer can use deadly force in these circumstances. Id.

Commander Bonner's testimony indicates that, at the very least, Section 314.7.3 of Policy 314 applies in circumstances such as these, where an officer who is not in a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-8610-CAS(JPRx) | Date | December 13, 2016 |
| Title | JEREMY LEON BORDEGARAY v.  COUNTY OF SANTA BARBARA ET AL. | | |

vehicle fires on a moving vehicle.  Dkt. 89, Ex. 1 39:14–40:7.[3]  Accordingly, the Court concludes that Section 314.7.3 is relevant to determining whether Calderon's conduct was reasonable.  The Court further concludes that the probative value of Section 314.7.3 is not substantially outweighed by the danger of wasting time or unfair prejudice.  However, the Court finds that the probative value of *the remainder* of Policy 314 is substantially outweighed by a danger of confusing the issues and wasting time.  As a result, the Court admits Section 314.7.3, but excludes the remainder of Policy 314.

Accordingly, the Court **GRANTS in part** and **DENIES in part** defendants' motion in limine No. 7.

## IV.    CONCLUSION

In accordance with the foregoing:

The Court **GRANTS** plaintiff's motions in limine No. 1 and 6 **in part** and **DENIES** them **in part**;

The Court **GRANTS** plaintiff's motions in limine Nos. 2 and 4;

The Court **DENIES** plaintiff's motions in limine No. 3, 5, and 7;

The Court **GRANTS** defendants' motion in limine No. 1.

The Court **GRANTS in part** and **DENIES in part** defendants' motions in limine Nos. 2, 4, 6, and 7;

The Court **DENIES** defendants' motions in limine Nos. 3 and 5.

IT IS SO ORDERED.

| | | | 00 | : | 28 |
|---|---|---|---|---|---|
| | | Initials of Preparer | | CMJ | |

---

[3] At oral argument, counsel for defendants stated that defendants would not oppose the admission of Section 314.7.3.